UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

Melanie Bennett and Raburn Bennett,

    Debtors.
_____/

Case No. 8:07-bk-11881-MGW
Chapter 7

In re:

Toni Browning and Jason Browning,

    Debtors.
_____/

Case No. 8:08-bk-03071-MGW
Chapter 7

In re:

Lillian Grace Roesler,

    Debtor.
_____/

Case No. 8:07-bk-10637-MGW
Chapter 7

## CONSOLIDATED MEMORANDUM OPINION ALLOWING DEBTORS' CLAIMS OF THE FLORIDA SUPER-EXEMPTION

Under a newly enacted exemption available under Chapter 222 of the Florida Statutes, an individual who does not "claim or receive the benefits of a homestead exemption under s. 4, Art. X of the State Constitution" ("Homestead Exemption") is entitled to claim an additional $4,000 of personal property as exempt from legal process. Fla. Stat. § 222.25(4) (2007) ("Statutory Exemption"). In *Gatto*, this Court had before it the question of whether debtors who do not claim their homes as exempt under the Homestead Exemption and who have stated their intention to surrender their homes can claim the Statutory Exemption. *In re Gatto*, 380 B.R. 88, 93 (Bankr. M.D. Fla. 2007). This Court concluded in *Gatto* that under such circumstances a debtor would be entitled to claim the Statutory Exemption. *Id.*

Like in *Gatto*, the Debtors in the instant cases have not claimed their homes as exempt under the Homestead Exemption. However, unlike in *Gatto*, these Debtors did not indicate in timely filed Statements of Intention their intent to surrender their homes. The Bennett Debtors simply did not state an intention to surrender their homestead. The Browning Debtors did not declare an intention to surrender their homestead until over three months after the petition date. The Roesler Debtor originally claimed the Homestead Exemption, but, following voluntary conversion to Chapter 7, amended her Statement of Intention indicating the intent to surrender her homestead and claim the

Statutory Exemption. The Trustees in these cases argue that as a result, these Debtors are receiving the benefits of the Homestead Exemption, and thus, the Statutory Exemption is not available to them. Upon consideration of the arguments presented to the Court, for the reasons set forth below, the Court rejects the Trustees' arguments and concludes that an intention to surrender the homestead is not a condition of obtaining the Statutory Exemption. As none of the Debtors in these cases are otherwise "receiving the benefits of" the Homestead Exemption, they are each entitled to claim the Statutory Exemption.

### I.     Procedural Background

In the joint case of Melanie Bennett and Raburn Bennett, the Debtors listed real property of a homestead mobile home and lot on their Schedule A, Real Property, indicated an intention to reaffirm the debt in their Statement of Intention, but did not claim the property as exempt on their Schedule C, Property Claimed as Exempt. The Bennett Debtors claimed the Florida Statutory Exemption to exempt an anticipated tax refund of $7,000. (Doc. No. 1.)

In the joint case of Toni Browning and Jason Browning, the Debtors likewise listed homestead real property on Schedule A, did not claim it as exempt on Schedule C, but indicated the intent to reaffirm the debt in their Statement of Intention. (Doc. No. 1.) The Browning Debtors listed various items of personal property as exempt under the constitutional personal property exemption, Fla. Const. art. X, section 4(a)(2), and listed their 2008 Economic Stimulus Act rebate, of an unknown amount, as exempt under the Florida Statutory Exemption. The Debtors subsequently filed an Amended Statement of Intention indicating that they would be surrendering their homestead. (Doc. No. 30.)

In the case of Lillian Grace Roesler, the Debtor filed originally under Chapter 13, but fell behind on plan payments and then converted the case to Chapter 7. (Doc. No. 36.) In the Debtor's original Schedule C, real property was claimed as exempt under the Florida constitutional Homestead Exemption (Doc. No. 12), but on an amended Schedule C filed after the conversion of the case, the Statutory Exemption, not the Homestead Exemption, was claimed (Doc. No. 51). The Statement of Intention filed with the amended Schedule C indicated that the Debtor would be surrendering her home. (Doc. No. 51.)

### II.    Conclusions of Law

*A.    Florida Cases Since* Gatto

Several bankruptcy courts in Florida have, since *Gatto*, wrestled with the application of the Statutory Exemption. These courts have split on the question of whether a debtor must surrender the homestead in order to not "receive the benefits of" the Homestead Exemption.

In the first of these decisions, *In re Morales*, the debtor had originally indicated in the statement of intention that the debtor planned to keep the homestead and reaffirm two mortgages. 381 B.R. 917, 919 (Bankr. S.D. Fla. 2008) (Ray, J.). However, five months into the bankruptcy, the debtor amended the statement of intention to reflect a decision to

2

surrender the real property and reject both mortgages. The court noted that under Florida law abandonment of the homestead is one way in which homestead protection is lost and that to successfully abandon the property the debtor must state an intention to abandon and have the intent to not return. *Id.* at 920.

Nevertheless, the court held that the debtor could not claim the Statutory Exemption, because in order to not "receive the benefit of" the Homestead Exemption the debtor 1) must not claim the exemption in the debtor's bankruptcy schedules and 2) must have stated an intent to surrender the homestead in a timely filed statement of intention. *Id.* at 922. Judge Ray held that because this debtor's amendments were not timely, the debtor was not allowed to claim the Statutory Exemption.

In the second of these decisions, *In re Franzese*, the debtor jointly owned a home with a non-filing spouse as tenants by the entirety. 383 B.R. 197, 200-01 (Bankr. M.D. Fla. 2008) (Jennemann, J.). The debtor listed the home as an exempt tenancy by the entirety pursuant to 11 U.S.C. § 522(b)(3)(B), indicated an intent to reaffirm the two mortgages, and claimed the Statutory Exemption. The debtor argued that because the home was exempt as a tenancy by the entireties property and because the home was worth approximately $70,000 *less* than the amount of the two mortgages encumbering it, the debtor did not receive any benefits of the Homestead Exemption. *Id.* at 201.

Judge Jennemann noted that to qualify for the Homestead Exemption under Florida law, the homeowner must actually use and occupy the home, as well as express an actual intent to live there permanently. *Id.* at 203. Further, the court held that under § 522(b)(3)(A), the relevant date for determining exemptions is the date of the filing of the petition—therefore, post-filing changes are immaterial to the exempt status of property. *Id.* If the debtor "*could have claimed*" the Homestead Exemption under Florida law on the day the petition was filed, the debtor was ineligible to claim the Statutory Exemption. *Id.* at 206 (emphasis in original). A debtor may only claim the Statutory Exemption if the debtor surrenders the homestead. *Id.*

In the next decision, *In re Shoopman*, the debtor originally declared an intention to reaffirm two mortgages and a lien on the homestead but subsequently consented to relief from stay and amended the statement of intention to reflect a surrender of the property. No. 07-19450, 2008 WL 817109 (Bankr. S.D. Fla. Mar. 25, 2008) (slip-op.) (Hyman, C.J.). Chief Judge Hyman held that the debtor could claim the Statutory Exemption because the debtor never affirmatively claimed the Homestead Exemption nor received its benefits as of the date of the petition. *Id.* at *4.

The court held that the question of whether a debtor "receives the benefits of" the Homestead Exemption is a case-by-case, fact-based inquiry and "must turn on the facts of each case." *Id.* at *2. Whether a debtor reaffirms a mortgage or surrenders a homestead does not definitively determine whether a debtor receives the benefit of the Homestead Exemption. *Id.* at *3. The court rejected the argument that a debtor receives the benefits of the Homestead Exemption by merely continuing to occupy the real property. *Id.* at *2. Since the home was not claimed as exempt, it could be administered by the trustee; however, being administered by the trustee or surrendered to a creditor was not necessary

3

in order for the debtor to stop receiving the benefits of the Homestead Exemption. *Id.* The court rejected the holding in *Morales* and the opinion in *Gatto* to the extent that it could be interpreted as requiring a debtor to timely state the intention to surrender the home to claim the Statutory Exemption. *Id.* at *3.

The debtor in *Martias* initially claimed real property as an exempt homestead and indicated on the statement of intention that she would reaffirm the mortgage. *In re Martias*, No. 07-20488, 2008 WL 906776, *1 (Bankr. S.D. Fla. Apr. 3, 2008) (slip-op.) (Hyman, C.J.). The value of the real property was listed as $200,000, the debt encumbering the property amounted to $244,000. *Id.* Two months after the petition date, the debtor issued amended schedules and statements reflecting an intention to surrender the real property and claiming the Statutory Exemption. *Id.* At the time of the hearing on the trustee's objection to the claim of exemption, the debtor continued to reside at the real property. *Id.*

Again, Chief Judge Hyman held that the debtor had neither claimed nor otherwise received the benefit of the Homestead Exemption and, therefore, could claim the Statutory Exemption. *Id.* at *3. Debtors are allowed to amend their schedules as a matter of course at any time during the case under Rule 1009(a), which the Eleventh Circuit has held requires a showing of bad faith or prejudice to a creditor by clear and convincing evidence before a court may deny an amendment. *Id.* at *2 (citing *In re Jordan*, 332 B.R. 472, 475 (Bankr. M.D. Fla. 2001) (Paskay, J.)). The debtor's amended schedules relate back to the petition date, and, under these amended schedules, the debtor does not claim the Homestead Exemption. *Id.* Affirming the holding in *Shoopman* that occupancy is irrelevant to the question of whether a debtor receives the benefits of the Homestead Exemption, the court held that the *Martias* debtor received no benefits of the Homestead Exemption. *Id.*

The debtor in *Hernandez* listed real property as an exempt tenancy by the entirety and simultaneously claimed the Statutory Exemption. *In re Hernandez*, No. 07-16379, 2008 WL 1711528, *1 (Bankr. S.D. Fla. Apr. 10, 2008) (slip-op.) (Mark, J.). The trustee objected, arguing that the debtor was receiving the benefits of the Homestead Exemption because the non-debtor spouse could assert the exemption and because the debtor could claim the homestead tax exemption benefits that "flow" from the Homestead Exemption. *Id.* Judge Mark held that unless the non-debtor spouse affirmatively waived the right to assert the Homestead Exemption, the debtor was still receiving the benefits of the exemption. *Id.* at *6.

Citing *Gatto*, the court rejected the argument that a debtor eligible to receive the benefits of the Homestead Exemption is ineligible to claim the Statutory Exemption, because the statute only excludes those who "receive the benefits of," not all those who are eligible. *Id.* at *3. The court also held that homestead tax benefits are not benefits provided by the Homestead Exemption, which, by its plain meaning, only provides the benefit of protecting a homestead from execution by creditors. *Id.* at *4. However, while a trustee may administer tenancy by the entireties property for the benefit of joint creditors, assets shielded by the Homestead Exemption may not be so administered. *Id.* at *5. Because the non-debtor spouse had not affirmatively waived the Homestead

4

Exemption, the spouse would be able, in this case, to claim the Homestead Exemption were any joint creditors to attempt to collect. *Id.* at *5-*6.

In *Magelitz*, the debtor expressed to the court an intention to remain in the home and continue making regular payments, but did not claim the home as exempt. *In re Magelitz*, 386 B.R. 879, 880-81 (Bankr. N.D. Fla. 2008) (Killian, C.J.). Rather, the debtor argued that because there was no equity in the home and the debtor had not claimed the Homestead Exemption, he was entitled to claim the Statutory Exemption. *Id.* at 880. The court held, citing *Gatto*, *Morales*, and *Franzese*, that a debtor who intends to keep the home, reside there, and make regular mortgage payments was receiving the benefits of the Homestead Exemption. *Id.* at 883.

Judge Killian noted that Florida's constitutional Homestead Exemption is self-executing; no affirmative action is required in order to make something a homestead if it is qualified to be one. *Id.* Under Florida law, once a property achieves homestead status, it retains that status until it is abandoned or alienated. *Id.* The debtor's failure to claim the exemption does not alter the property's homestead status under state law. *Id.* If the debtor continues to possess property that is a homestead under state law, it follows that the debtor receives the benefits of the Homestead Exemption. *Id.* The court noted that although the property has no equity, the debtor still receives the benefit of the Homestead Exemption because creditors are not able to attach judgment liens against the homestead. *Id.* at 884.

Finally, the debtor in *Guididas* originally filed under Chapter 7 claiming the Homestead Exemption and indicating an intent to reaffirm the mortgage. *In re Guididas*, 393 B.R. 251, 252 (Bankr. M.D. Fla. 2008) (Paskay, J.). Nearly six months into the case, the debtor amended the statements and schedules indicating an intent to surrender the homestead and claim the Statutory Exemption. *Id.* The court, Judge Paskay, held that the originally filed Schedule C, attached to the petition for relief, controlled the debtor's entitlement to exemptions. *Id.* at 256. Because the debtor had originally claimed the homestead as exempt and indicated an intent to reaffirm the mortgage, the debtor did receive the benefits of the Homestead Exemption. *Id.*

B.   *Surrender is Not a Prerequisite for the Statutory Exemption*

As discussed in *Gatto*, it is this Court's view that according to its plain and ordinary meaning, the Statutory Exemption is available to individuals who neither claim nor receive the benefits of, specifically, the Homestead Exemption found in Article X, section 4 of the Florida Constitution. *In re Gatto*, 380 B.R. at 91-92. Most courts are in agreement with this statement as to what the Statutory Exemption provides. However, courts have disagreed as to what should be considered part of the "benefits of" the Homestead Exemption.

Several courts have held that mere possession of property that could be exempted in the bankruptcy case under the Homestead Exemption provides the debtor with "the benefits of" the exemption. *See In re Magelitz*, 386 B.R. at 883; *In re Franzese*, 383 B.R. at 203; *In re Morales*, 381 B.R. at 920. If this interpretation of the statute were adopted,

5

then several words in the statute would become "mere surplusage." *Hechtman v. Nations Title Ins. of N.Y.*, 840 So. 2d 993, 996 (Fla. 2003) (stating that "words in a statute should not be construed as mere surplusage"). There would be no reason for the legislature to have allowed the exemption for a debtor who "does not claim or receive the benefits of" if it truly meant merely that a debtor "could claim" or "is eligible to claim" the Homestead Exemption. The benefits specifically provided by the Florida constitutional Homestead Exemption are clearly defined under Florida law.

1. Florida's Constitutional Homestead Exemption

The following paragraphs will analyze the benefits that the Homestead Exemption of Article X of the Florida Constitution provides under Florida law. Article X of the Florida Constitution reads, in relevant part, as follows:

§ 4. Homestead; exemptions

> (a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:
>
> (1) a homestead, . . . .

Fla. Const. art. X, § 4.

As Judge Mark noted in *In re Hernandez*, the Homestead Exemption found in Article X of the Florida Constitution only provides one benefit—it shields the home from forced judicial sale. 2008 WL 1711528, at *4. While there is a homestead *tax* exemption in the Florida Constitution, that provision is found in Article VII, not Article X. *See id.*; *DeQuervain v. Desguin*, 927 So. 2d 232, 233 (Fla. 2d DCA 2006) (analyzing the requirements for a "homestead" for purposes of the constitutional homestead tax exemption found in Article VII, section 6(a) of the Florida Constitution). The general benefits of owning a home are also irrelevant to this analysis. Whether a debtor has equity in the property, lives in the home, or enjoys any other types of tax benefits has no relevance to the question of whether a debtor receives the benefits of the Florida Homestead Exemption.

The Homestead Exemption of Article X of the Florida Constitution shields a "homestead" from forced sale in all but the few situations outlined in the constitutional provision. As the Florida Supreme Court has made clear, a homestead may only be subject to forced sale for "(1) the payment of taxes and assessments thereon; (2) obligations contracted for the purchase, improvement or repair thereon; or (3) obligations contracted for house, field or other labor performed on the realty." *Havoco v. Hill*, 790 So. 2d 1018, 1022 (Fla. 2001). The Homestead Exemption is to be liberally construed. *Tramel v. Stewart*, 697 So. 2d 821, 824 (Fla. 1997). The Florida Supreme Court has held that a homestead is protected from forced sale even if the homestead was purchased with

and improved by funds gained through illegal activity, *Tramel*, 697 So. 2d 824 *passim*, or if the homestead was purchased with the clear and specific intent to shield assets and hinder, delay, and defraud legitimate creditors, *Havoco*, 790 So. 2d 1018 *passim*.

As several courts have pointed out, there is little that a homeowner can do under Florida law to lose the protection of homestead. *See In re Magelitz*, 386 B.R. at 883; *In re Franzese*, 383 B.R. at 203. The homestead character of a property "depends upon an actual intention to reside thereon as a permanent place of residence, coupled with the fact of residence." *Hillsborough Investment Co. v. Wilcox*, 13 So. 2d 448, 452 (Fla. 1943); *see also Orange Brevard Plumbing & Heating Co. v. La Croix*, 137 So. 2d 201 (Fla. 1962) (holding that "intent *alone* is not a sufficient basis for the establishment of a homestead" (emphasis in original)).

Although a homestead may be alienated, abandoned, sold, or mortgaged like any other property, a homeowner cannot "waive" the constitutional Homestead Exemption in any agreement except through a properly executed mortgage. *Chames v. DeMayo*, 972 So. 2d 850, 854 (Fla. 2007) (holding that the waiver of the Homestead Exemption in an unsecured retainer agreement was unenforceable). It is well established that "where a homestead has been acquired it can be waived only by abandonment or by alienation in the manner provided by law." *Olesky v. Nicholas*, 82 So. 2d 510, 512 (Fla. 1955). Abandonment of a homestead occurs when "the owner removes from the home with no intention of returning, takes up [] permanent abode at another place and pursues [a] livelihood there." *Barlow v. Barlow*, 23 So. 2d 723, 724 (Fla. 1945). While homestead status may be lost through alienation or sale of the homestead property, the Florida Supreme Court has held that even the proceeds from the sale of a homestead are protected from the claims of creditors if the owner intends to reinvest the proceeds in another homestead within a reasonable time. *Orange Brevard*, 137 So. 2d at 206.

Thus, under Florida law, the Homestead Exemption found in Article X of the Florida Constitution protects the homestead from forced sale in almost all circumstances. Until the homestead status is lost through sale of the property or abandonment through change in residence, the homestead can only be sold to pay three narrow categories of debts: taxes and assessments, mortgages or loans for improvements, and laborer's liens for improvements on the property.

2.  Receiving the Benefits

As some courts have noted, it is not possible under Florida law to stop receiving the benefits of the Homestead Exemption without abandonment or alienation. *See In re Magelitz*, 386 B.R. at 883; *In re Franzese*, 383 B.R. at 203. If all who could claim the exemption were to automatically receive the benefits of the Homestead Exemption in the context of a bankruptcy, then the decisions in *Magelitz, Franzese* and *Morales* would be persuasive in holding that mere eligibility is sufficient and the language of the Statutory Exemption provision would be largely unnecessary. However, it is clear to this Court that a debtor in bankruptcy may cease to receive the benefits of the Homestead Exemption regardless of whether that protection could cease under the operation of Florida law alone.

7

Pursuant to § 522(b)(1) of the Bankruptcy Code, "an individual debtor may exempt from property of the estate" various items or amounts specified under either the federal or state scheme of exemptions. 11 U.S.C. § 522(b)(1). The term "may" indicates that the debtor is not required to claim exemptions. If the debtor does not choose to exempt the homestead under the Florida Homestead Exemption, the real property remains property of the estate under § 541 of the Bankruptcy Code and is subject to administration by the trustee. *See In re McLain*, 516 F.3d 301, 315 (5th Cir. 2008) (holding that property that "is entitled to be exempted is initially regarded as estate property until it is claimed and distributed as exempt" (quoting *Cyrak v. Poyer*, 80 B.R. 75, 79 (N.D. Tex. 1987))); *In re Smith*, 640 F.2d 888, 891 (7th Cir. 1981) (noting that property not claimed as exempt "is not exempt and the trustee may dispose of it as he sees fit"). As a non-exempt asset, any equity left in the property after the secured claims have been satisfied could be used to satisfy the claims of unsecured creditors. In that situation, a debtor is not receiving the benefits of the Homestead Exemption's protection of the homestead from forced judicial sale.

In accordance with the opinions in *Shoopman*, *Martias*, and *Hernandez*, it is this Court's conclusion that debtors who do not affirmatively exempt their homestead under § 522(b)(1) and the Homestead Exemption, but instead leave it available for administration by the Chapter 7 trustee, neither have claimed nor received the benefits of the Homestead Exemption found in Article X of the Florida Constitution. It is important to note that the Chapter 7 trustee need not actually administer the homestead for it to lose the protection of the Article X Homestead Exemption. That the homestead would not be protected were the trustee to decide to administer it is sufficient, because this means that the protection afforded by the Homestead Exemption has ceased.[1]

This holding does not render the phrase "receive the benefits of" without meaning. *See Hechtman*, 840 So. 2d at 996 (noting that "[i]t is an elementary principle of statutory construction that significance and effect must be given to every word, phrase, sentence, and part of the statute if possible"). A debtor who does not claim the Homestead Exemption may still receive its benefits in certain limited circumstances that can only be determined on a case-by-case basis, after a fact-intensive inquiry. *See In re Shoopman*, 2008 WL 817109 at *2. For example, a debtor may choose to let a homestead remain property of the bankruptcy estate, while a non-debtor spouse could still shield the real property under the Homestead Exemption from administration by the trustee, even to satisfy joint debts that could otherwise be satisfied by jointly owned property. *In re Gatto*, 380 B.R. at 92; *see also Hernandez*, 2008 WL 1711528 at *5-*6.

Turning to the present case, as a preliminary matter, property may be claimed exempt under a "Federal . . . or State or local law that is applicable on the date of the filing of the petition . . . ." 11 U.S.C. § 522(b)(3)(A). The Statutory Exemption became effective on July 1, 2007, before any of these Debtors filed their petitions for relief. *See* Act of June 19, 2007, 2007 Fla. Sess. Law Serv. 185, sec. 1 (West) (amending Fla. Stat. § 222.25). As the record clearly shows, these Debtors do not claim the Homestead

---

[1] As the matter is not before it, this Court will not address whether a homestead may be exempted as a tenancy by the entireties without the Debtor receiving the benefits of the Homestead Exemption.

Exemption on their Schedule Cs. Further, there is no recitation in any of these cases of facts supporting the proposition that any of these Debtors otherwise receive the benefits of the Homestead Exemption found in Article X of the Florida Constitution. Therefore, each of these Debtors is entitled to claim the Statutory Exemption.

The Court would note that this holding does not provide a windfall to these Debtors. By choosing not to claim a homestead as exempt, they open themselves up to the possibility that the Trustees will exercise their rights to liquidate the homestead properties for the benefit of unsecured creditors. Even if there is little or no equity in a piece of real property, and possibly even if the real property is greatly under water, a trustee may be able to find a buyer willing to speculate and purchase the property at *some* price. Debtors who choose not to claim the Homestead Exemption take that chance.

C.    *"Timeliness" is not a Prerequisite of the Statutory Exemption*

An additional question before the Court in the Roesler case is whether a debtor may receive the Statutory Exemption following conversion to Chapter 7 after originally claiming the Homestead Exemption while proceeding under Chapter 13. Several courts have addressed, with mixed results, the question of whether a debtor who originally claims the Homestead Exemption, but later amends the schedules and statements to not claim the exemption and reflect the surrender of the real property, is eligible to receive the Statutory Exemption. *See In re Guididas*, 393 B.R. at 256 (holding that a timely filed statement of intention indicating a surrender of the property is required); *In re Martias*, 2008 WL 906776 at *2 (holding that the debtor may claim the exemptions listed in an amended Schedule C because the debtor's amended schedules "relate back" to the petition date); *In re Morales*, 381 B.R. at 922 (holding that an amended statement of intention must be "timely filed" in order to be considered).

Since this Court has held, above, that surrender is not required to claim the Statutory Exemption, the question remaining is whether this Debtor may amend her Statement of Intention and Schedule C seven months into the case, following conversion to Chapter 7, to remove a claim of the Homestead Exemption and instead claim the Statutory Exemption. In accordance with *Martias*, and for the reasons stated below, the Court concludes that she may.

A voluntary debtor is required to file schedules and statements within 15 days of filing the petition. Fed. R. Bankr. P. 1007(c). However, the Eleventh Circuit has made clear that bankruptcy courts have no discretion to deny a debtor's right to amend schedules and statements at *any* time during a case. *In re Doan*, 672 F.2d 831, 833 (11th Cir. 1982) (allowing the debtors to amend their claim of exemptions ten months after the filing to include an expected tax refund); *see also* Fed. R. Bankr. P. 1009(a). The *Doan* Court included one limitation on the right to amend—that an amendment might be denied if there is a showing of bad faith or prejudice to creditors. 672 F.2d at 833.

For purposes of applying the Florida Statutory Exemption, this Court must make a determination partly of fact as to whether the debtor is claiming or receiving the benefits of the Homestead Exemption in the context of the bankruptcy case. *See* Fla. Stat. §

9

222.25(4). So long as a debtor's amendment of Schedule C, Property Claimed as Exempt is not prejudicial to creditors, it will be allowed and may, in itself, by the terms of the Statutory Exemption, change a debtor's entitlement. *See* Fla. Stat. § 222.25(4) ("claim . . . a homestead exemption . . .").

In the Roesler case, the Debtor originally claimed a homestead as exempt under the Homestead Exemption. Following conversion to Chapter 7, the Debtor amended Schedule C to remove the claim of the Homestead Exemption. This amendment, which has not been challenged as done in bad faith or prejudicial to creditors, now entitles her to claim the Statutory Exemption.

D.   *Economic Stimulus Check*

Also in the Roesler bankruptcy case, the Debtor argued that the portion of the tax refund constituting the economic stimulus check was not subject to turnover as property of the estate, citing the case of *In re Andrews*, 386 B.R. 871 (Bankr. D. Utah 2008) (Thurman, J.). The court in *Andrews* held that debtors who filed their petition *before* the Economic Stimulus Act of 2008 was passed had no legal or equitable interest in the rebate at the time of the petition, and therefore the economic stimulus check did not become property of the estate under § 541(a)(1). *Id.* The Act entitling taxpayers to an economic stimulus check was passed into law on February 13, 2008. Economic Stimulus Act of 2008, Pub. L. No. 110-185, 122 Stat. 613. Like the *Andrews* debtor, when the Roesler debtor filed for bankruptcy on November 4, 2007, Congress had not yet passed the Act that gave rise to the Debtor's entitlement to the economic stimulus check. This Court agrees with the analysis in *Andrews*, and therefore, the Roesler Debtor need not turn over her economic stimulus check, which never became property of the bankruptcy estate.

### Conclusion

For the reasons stated herein, each Debtor in these cases is entitled to claim the Statutory Exemption. The Court has entered appropriate orders on the Trustee's Objection to the Debtor's Claim of Exemptions and Motion for Turnover in the Bennett case (Doc. No. 21; Doc. No. 22), and will enter appropriate orders in the Browning and Roesler cases in accordance with this Opinion.

**DATED** in Chambers at Tampa, Florida, on   October 08, 2008   .

_Michael G. Williamson_
Michael G. Williamson
United States Bankruptcy Judge

Copies to be provided by CM/ECF service.